IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JULIE MERIANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00401-SRB |
| | ) | |
| WILLIAM BARR,[1] | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant William Barr's ("FBI")[2] Motion for Summary Judgment. (Doc. #42). For the following reasons the motion is GRANTED.

**I. LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law." A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The purpose of summary judgment "is not to cut litigants off from

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), U.S. Attorney General William Barr, under whose supervision lies the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), is substituted for former-Attorney General Jefferson B. Sessions, III, as Defendant.

[2] A federal employee alleging employment discrimination in a civil action may bring the action against "the head of the department, agency, or unit." *See* 42 U.S.C. § 2000e-16(c). As U.S. Attorney General, Barr supervises the DOJ and its various subdivisions, including the FBI, and is properly named as the party-defendant. For clarity, the Court will refer to Defendant as "FBI."

their right of trial by jury if they really have issues to try." *Hughes v. Am. Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976) (internal quotation marks omitted) (quoting *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467 (1962)).

## II. BACKGROUND

Plaintiff Julie Meriano ("Meriano"), a former Special Agent for the Kansas City Division of the FBI, seeks relief from alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"). Considering the parties' factual positions in the light most favorable to the non-moving party, the Court finds the relevant facts to be as follows. Meriano transferred into the FBI's Kansas City field office in July 2009, where she was assigned to a ten-agent covert surveillance unit. Shortly after, Meriano became involved in a sexual relationship with an agent assigned to the surveillance unit, Special Agent Sean Edwards ("Edwards"), a relationship which eventually came to include Edwards' wife. The relationship ended badly during the summer of 2010, and Edwards and his wife soon began subjecting Meriano to various types of harassing conduct. Relevant here are Meriano's claims that Edwards spread false and negative rumors about her, including attributing her professional success to her promiscuity, stating she was "overly emotional and histrionic about minor things," and accusing her of creating a fake online-dating profile for him. (Doc. #46, p. 18).

The FBI transferred Edwards out of the surveillance unit in 2011. Meriano decided not to pursue an Equal Employment Opportunity ("EEO") hostile work environment complaint related to Edwards' conduct at that time, in part because she believed the matter would be reported to the FBI's Office of Professional Responsibility. Following Edwards' transfer, Meriano no longer saw or interacted with him. However, Meriano alleges that Edwards' harassment

continued after his transfer, namely in the form of damaging and negative rumors he periodically communicated to third parties.

Meriano was, by all accounts, an effective FBI agent. She received strong performance ratings from her supervisors, and in 2014 she was assessed as "outstanding" by her immediate supervisor. She additionally received two performance awards in March and April 2015. At some point in 2015, Meriano was designated as the team leader for the surveillance squad. While this designation does not result in increased pay or benefits, according to Meriano it is a position of prestige that carries with it additional time commitments.

Edwards initiated his own EEO complaint and eventually filed a lawsuit alleging, *inter alia*, that his transfer was discriminatory and Meriano had received preferential treatment from the FBI. *See Edwards v. Lynch*, No. 13-0729-CV-ODS, 111 F.Supp.3d 989 (W.D. Mo. May 22, 2015). The bench trial of Edwards' discrimination case took place in May 2015, and Meriano testified in court on behalf of the FBI on May 7, 2015. While the nature and scope of Meriano's preoccupation with the Edwards trial is disputed, Meriano did offer at one point to step down as team leader due to the upcoming trial. Meriano feared that Edwards might react toward her in a violent and retaliatory way if he lost his case, and she expressed those concerns in writing to FBI management prior to the trial. At one point, Meriano also met with members of Legal Aid and the Kansas City Police Department regarding her safety concerns. After her testimony at Edwards' trial but prior to the verdict, Meriano requested a meeting with Special Agent-in-Charge Jackson ("Jackson") and communicated her plan to take open-ended leave once the verdict in Edwards' case was announced. Jackson scheduled that meeting for May 29, 2015. Subsequently, the Honorable Ortrie Smith issued a written decision on May 22, 2015, finding in favor of the FBI on all of Edwards' employment discrimination claims.

Meriano and Jackson met as scheduled on May 29, 2015, at the FBI offices. Certain aspects of this meeting are highly disputed. Meriano admits she had not slept the night before the meeting and states she was frightened about meeting in a building where Edwards might also be located. During that meeting, Jackson informed Meriano that he had received complaints about her preoccupation with the Edwards trial, including her diminished performance and effectiveness as team leader. Meriano claims Jackson verbally reprimanded her, berated her, and threatened to transfer her to a different division and confiscate her weapon. Jackson did not ultimately act on his threats. Jackson also asked if she had received any contact from Edwards in the four years since he had been transferred to a different unit. Meriano responded that she had not, but Meriano claims that when she attempted to explain her concerns, Jackson acted dismissively, "put his hand in her face," and did not allow her to explain further. At one point during the meeting, Meriano began to cry. Jackson proceeded to remove Meriano as team leader of the surveillance squad, though whether that removal was permanent or temporary is disputed. Jackson also instructed Meriano to go on leave from work, though the nature of that instruction and the type of leave she was supposed to take is disputed. Jackson also referred Meriano to the FBI's Employee Assistance Program ("EAP") due to her emotional state and visible signs of excessive stress.

Meriano and Jackson met again on June 9, 2015. During that meeting, Jackson told Meriano he would consider the recommendations of the EAP counselor in determining how to best move forward. Meriano claims she was also directed to not discuss with anyone her harassment or reprisal concerns regarding Edwards. Following a physical examination in June 2015 that declared her able to return to work, Meriano's supervisor(s) asked her to return to work on July 1, 2015. Meriano declined to do so. For the first time, Meriano also reported her

concerns of workplace retaliation and a hostile work environment to an EEO counselor on July 1, 2015.

The nature and circumstances of Meriano's continued leave is disputed, though between June 29, 2015, and January 28, 2016, Meriano used 480 hours of FMLA and Leave Without Pay ("LWOP"), 342 hours of discretionary LWOP, 10 hours of compensatory time-off for travel, 268.25 hours of annual leave, and 109.75 hours of sick leave. On January 29, 2016, the FBI declared Meriano to be absent without leave ("AWOL"). Following ongoing consultations with medical providers, Meriano's physician issued a letter concluding Meriano was unable to return to work for the FBI in any capacity on March 8, 2016. On April 4, 2016, Jackson proposed that Meriano be removed from employment with the FBI, and her employment was ultimately terminated on August 4, 2016. At that time, Meriano acknowledged that she was no longer medically able to perform her duties as a special agent for the FBI.

## III. DISCUSSION

In her complaint, Meriano alleges she suffered unlawful sex discrimination and retaliation during her tenure at the FBI. Meriano seeks recovery for: (1) Count I: Discrimination Based on Sex; (2) Count II: Sexual Harassment/Hostile Work Environment; and (3) Count III: Retaliation. The FBI moves for summary judgment on all Counts. The Court first addresses Meriano's hostile work environment claim under Count II, followed by her sex discrimination and retaliation claims raised under Counts I & III.

### A. Count II: Sexual Harassment/Hostile Work Environment

Meriano alleges the FBI's representatives engaged in a pattern and practice of discrimination and harassment against her based on her sex, creating a hostile and offensive work environment "in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) and § 2000e-

3(a)."  (Doc. #1, p. 20).  "Under Title VII, a hostile work environment claim is a type of discrimination under 42 U.S.C. § 2000e-(2)(a)."  *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 807 (8th Cir. 2019) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993)).  In its motion for summary judgment, the FBI construes Count II of Meriano's complaint as raising (1) a hostile work environment claim based on gender and/or retaliation for events occurring on and after May 29, 2015, and (2) a sexual harassment claim against the FBI for earlier-occurring events.  (Doc. #43, p. 3).  In her response, Meriano argues that her hostile work environment claim hinges on three key events: "(1) false and salacious rumors by an agent with a history of violence, (2) a triggering event acknowledged by numerous persons to present a danger to Plaintiff, and (3) Defendant's dismissive response to Plaintiff's concerns and refusal to permit her to respond to the allegations against her."  (Doc. #46, p. 37).

**1. Hostile Work Environment Claim: Acts Before May 17, 2015**

Federal employees who believe they have been unlawfully discriminated against must consult an Equal Employment Opportunity counselor to try to informally resolve the matter before filing a complaint.  *See* 29 C.F.R. § 1614.105(a)-(b).  The parties agree Meriano's first contact with an EEO counselor regarding her concerns about a hostile work environment occurred on July 1, 2015.  (Doc. #46, p. 15; Doc. #42-10, p. 3).  As a threshold issue, the FBI argues Meriano's hostile work environment claim based on sexual harassment is untimely.  Meriano argues the earlier-alleged, sexually-harassing conduct of Edwards, combined with the later-alleged treatment by Jackson, together form a single, actionable "course of conduct" that she timely reported.  The timeliness of Meriano's claim is considered prior to its merits.

For a discrimination claim to be timely, a federal employee must contact an EEO counselor within forty-five days of an unlawful discriminatory act.  *See* 29 C.F.R. § 1614.105(b).

While hostile work environment claims typically encompass discrete acts of harassment over time, those acts are viewed as a single unlawful practice under Title VII. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002). Because a hostile work environment is viewed as a single unlawful practice, so long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117; *see also Jenkins v. Mabus*, 646 F.3d 1023, 1027 (8th Cir. 2011) (quoting *Morgan*, 536 U.S. at 122) ("A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."). A court must determine "whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period.'" *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 951 (8th Cir. 2011) (quoting *Morgan*, 536 U.S. at 120).

Given that she first reported her concerns on July 1, 2015, for Meriano's claim to be timely, an act of sexual harassment underlying her hostile work environment claim must have occurred after May 17, 2015. To the extent Meriano claims that she suffered from a hostile work environment based on sexual harassment by Edwards, the Court finds her claim to be untimely. Viewing Meriano's allegations in a light most favorable to her, even if Edwards' prior conduct did create a hostile work environment for her, she identifies no harassing conduct by Edwards that took place after May 17, 2015. Meriano only presents two complained-of acts which occurred during the operative forty-five day filing period: her meetings with Agent Jackson on May 29, 2015, and June 9, 2015.[3] Since Edwards' alleged harassment falls outside the operative

---

[3] Defendant argues any actionable harassment by Edwards ceased upon his transfer to another unit in 2011, while Plaintiff contends Edwards' harassment continued into 2015. The precise duration of Edwards'

7

time period, Meriano's sexual-harassment claims based on his conduct are time-barred unless she can demonstrate her later-occurring meetings with Jackson are part of the "same actionable hostile work environment practice." *See Wilkie*, 638 F.3d at 951.

A more recent unlawful act can revive an otherwise stale hostile work environment claim if the later-occurring act is "similar in nature, frequency, and severity" to the earlier conduct. *Jenkins*, 646 F.3d at 1027 (finding a hostile work environment claim time-barred where acts before the limitation period were "markedly different" from later acts); *Wilkie*, 638 F.3d at 951–52 (quoting *Morgan*, 536 U.S. at 781) ("[A]cts before and after the limitations period [that are] *similar in nature, frequency, and severity* . . . must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to th[e] action."). Here, Meriano argues that during her meetings with Jackson on May 29, 2015, and June 9, 2015, Jackson continued Edwards' sexually-harassing "course of conduct" by refusing to listen to Meriano's fear about the outcome of Edwards' ongoing trial, dismissing her personal safety concerns, and "putting his hand in [her] face" when she tried to express her thoughts. (Doc. #46, p. 34). Such allegations are markedly different from Edwards' earlier conduct which, by contrast, involved suggesting Meriano's professional success resulted from her promiscuity, describing Meriano as "overly emotional and histrionic," and creating an online-dating profile using Meriano's picture and falsely accusing Meriano of doing the same to him. (Doc. #46, p. 34). Because the later-occurring meetings with Jackson are not "similar in nature, frequency, or severity" to Edwards' earlier conduct, they cannot be considered part of the

---

harassment aside, Plaintiff offers no evidence of harassing conduct by Edwards during the operative window of time. At best, Plaintiff alleges Edwards communicated a threating statement about Meriano to a third party prior to Edwards' trial, which began on May 4, 2015. (Doc. #46-1, ¶ 10). This statement, even if actionable, still occurred outside the 45-day reporting window, and Plaintiff does not raise any argument regarding her entitlement to equitable tolling or estoppel.

8

same unlawful employment practice. Since Meriano did not contact an EEO counselor within 45 days after the last act of alleged sexual harassment by Edwards, Edwards' conduct is not actionable and Meriano's meetings with Jackson cannot revive her harassment claim. To the extent Meriano seeks relief for sexual harassment based on Edwards' conduct, the FBI is entitled to summary judgment.

### 2. Hostile Work Environment Claim: Acts After May 17, 2015

Since Meriano first reported her hostile work environment concerns to an EEO counselor on July 1, 2015, the FBI's alleged conduct after May 17, 2015—including her meetings with Jackson—may properly serve as a basis for her claim. *See Jenkins*, 646 F.3d at 1027 (citing *Patrick v. Henderson*, 255 F.3d 914, 916 (8th Cir. 2001)) (noting that "even if some Title VII claims are time-barred, [the] district court has jurisdiction of properly-exhausted claims"). In her formal complaint to the FBI, Meriano enumerates various actions by FBI management which allegedly subjected her to a hostile work environment, including Jackson's beratement and reprimand of Meriano, his removal of Meriano as the team leader of her unit, his threat to transfer Meriano and confiscate her weapon, and his alleged instruction to Meriano that she should take administrative leave and not discuss her discrimination claims. (Doc. #1-1, pp. 2–3).

To establish a cognizable hostile work environment claim, Meriano must show: "(1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment resulted from her membership in the protected class; and (4) the harassment was severe and pervasive enough to affect the terms, conditions, or privileges of her employment." *Mahler*, 931 F.3d at 807 (quoting *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 827 (8th Cir. 2017)). The FBI argues the evidence shows no causal nexus between Meriano's gender or her testimony during Edwards' trial and the FBI's alleged actions, or that those actions were objectively severe

9

enough to affect the terms of conditions of her employment. Meriano argues the issue should be decided by a jury.[4]

Excluding Meriano's allegations regarding Edwards' harassing conduct because they are time-barred, the Court finds that no reasonable jury could conclude the FBI's actions toward Meriano after May 17, 2015, occurred because of her gender. Meriano argues that Jackson did not allow her to express her concerns regarding Edwards due to "rumors and perceptions" arising from her prior sexual relationship with Edwards, and that his dismissiveness of her concerns was "explicitly [due] to Plaintiff's sex." (Doc. #46, p. 36). However, there is no evidence from which a fact finder could reasonably conclude that Jackson's treatment of Meriano was based on her gender. Even drawing all reasonable inferences in Meriano's favor, the record contains no evidence showing a causal nexus between the FBI's actions and Meriano's status as a woman. Even if Meriano subjectively believed her treatment was so severe that it created an abusive workplace environment—and assuming, for the sake of argument, that treatment was objectively severe and pervasive—there is still no evidence that would permit a reasonable jury to find that a male FBI agent in her same position would have been treated differently. This evidentiary shortcoming is fatal to her claim. *See, e.g.*, *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 721–22 (8th Cir. 2008) (granting summary judgment and finding claimant's recitation of actions taken against her, without more, to be insufficient evidence of sex discrimination).

---

[4] Meriano argues summary judgment should be denied because she has presented evidence of subjective offense, contending the Eighth Circuit has held such evidence renders summary judgment inappropriate in sexual harassment cases. *See, e.g.*, *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998); *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997). However, the Eighth Circuit has expressly stated "district courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (quoting *Reeves*, 530 U.S. at 148). Furthermore, the Eighth Circuit has specifically rejected the assertion that summary judgment is inappropriate in hostile work environment claims. *See Sutherland v. Mo. Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009). Summary judgment remains "a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson*, 643 F.3d at 1043.

To the extent Meriano still seeks relief for a hostile work environment due to retaliation under Count II, the FBI is again entitled to summary judgment.[5] Even if Meriano could show a causal nexus between her testimony in the Edwards trial and her subsequent treatment by the FBI, she must also show the alleged harassment was severe and pervasive enough to create an objectively abusive work environment. *See Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (noting the fourth element of a hostile work environment claim "involves both objective and subjective components"). Though Meriano may subjectively view Jackson's dismissiveness as callous or abusive, the record evidence could not permit a reasonable factfinder to conclude that the FBI's actions were "so intimidating, offensive, or hostile that it poisoned the work environment." *Id.* (citation omitted). Meriano must present evidence showing the FBI's conduct "was extreme in nature and not merely rude or unpleasant." *See Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 823 (8th Cir. 2017) (citation omitted). This is a demanding standard, and one Meriano fails to overcome here. Since no genuine factual dispute remains, the FBI is entitled to summary judgment for Meriano's hostile work environment claims raised under Count II.

**B. Count I: Discrimination Based on Sex**

"Title VII prohibits employers from discriminating based on sex with respect to compensation, terms, conditions, or privileges of employment." *Jenkins*, 540 F.3d at 748 (citing 42 U.S.C. § 2000e-2(a)(1)). Here, the parties agree Meriano presents no direct evidence of discriminatory treatment. "In the absence of direct evidence [of discrimination], [courts] analyze

---

[5] While Meriano's briefing solely argues that she suffered from a hostile work environment because of sexual harassment, her complaint also alleges hostility based on retaliation. A hostile work environment claim based on sexual harassment under § 2000e-2(a) is distinct from a hostile work environment claim based on retaliation under § 2000e-3(a). *See Mahler*, 931 F.3d at 807. The Court notes it is unclear whether Meriano still asserts that she suffered from a hostile work environment due to her testimony on behalf of the FBI in its successful defense of Edwards' discrimination lawsuit. Nevertheless, judgment as to Count II remains appropriate for the reasons discussed *infra*.

employment-discrimination claims under the *McDonnell Douglas* burden shifting framework." *Grant v. City of Blytheville, Ark.*, 841 F.3d 767, 773 (8th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "Under this framework, if an employee carries [her] burden of establishing a *prima facie* case of discrimination, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* "If the employer meets this burden of production, the employee must then 'prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.'" *Grant*, 841 F.3d at 773 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

To establish her *prima facie* case and shift the burden to the FBI under *McDonnell Douglas*, Meriano must establish: (1) she is a member of a protected group; (2) she was meeting the legitimate expectations of her job duties; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See Faulkner v. Douglas Cty. Neb.*, 906 F.3d 728, 732 (8th Cir. 2018) (citing *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011)). The FBI argues that Meriano, aside from her termination in 2016, fails to allege any legally-cognizable adverse action taken by Jackson or the FBI. The FBI also argues that Meriano produces no evidence showing the FBI's decisions were causally related to her sex. Meriano contends that the cumulative impact of all the alleged actions taken by the FBI toward Meriano amount to an actionable adverse action. She does not respond to the FBI's argument that no causal connection exists between the alleged adverse actions and her gender.

Even upon viewing the record in a light most favorable to the non-moving party, the Court finds Meriano does not put forth enough evidence to establish her *prima facie* case. The parties dedicate most of their briefing to the issue of whether Meriano alleges any cognizable

adverse employment actions. However, the FBI concedes that Meriano's termination in 2016 is a cognizable adverse action, defined by the Eighth Circuit as "a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). Furthermore, while "minor changes in working conditions," including those with "no reduction in pay or benefits" do not constitute an adverse action, *id.*, the Court agrees that Meriano does present evidence of other discrete acts, such as her removal as surveillance team leader, which could permit a reasonable jury to find that her job responsibilities were materially altered or she suffered a loss of prestige. *See Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 920 (8th Cir. 2000) (holding a transfer to a less-prestigious unit and diminishment of title may constitute an adverse action). Though not all of the acts alleged are adverse, the Court declines to examine the nuances of each discrete action because Meriano argues the cumulative effect of each act constitutes an adverse employment practice. *See Phillips v. Collings*, 256 F.3d 843, 849 (8th Cir. 2001) (citing *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997)) (declining to evaluate whether each discrete act is adverse when claimant alleges the cumulative effect of those actions is actionable). Yet even if some of Jackson's decisions on May 29, 2015, do constitute adverse actions, Meriano's *prima facie* case still fails because there is insufficient evidence showing any of the FBI's alleged adverse actions were based on her gender.

The FBI is entitled to summary judgment on Meriano's sex-discrimination claim since no reasonable inference of gender animus toward Meriano can be drawn from the evidence presented. "[A] plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye*, 641 F.3d at 1019 (citing *Lewis v.*

*Heartland Inns of Am., LLC*, 591 F.3d 1033, 1039–40 (8th Cir.2010)). While no precise formula exists for establishing this element of a *prima facie* case, Meriano must present *some* evidence indicating the treatment she received would not have occurred but for her sex. *See Lewis*, 581 F.3d at 1040. She falls short of that requirement here.

The record contains no evidence of similarly-situated employees who were treated differently or more favorably than Meriano. Despite her argument to the contrary, there is also no evidence indicating the FBI "slut-shamed" Meriano or that the FBI's treatment of Meriano imposed some type of double-standard on her due to her prior sexual relationship with Edwards. There is additionally no evidence of any biased or gendered comments or stereotyping by Jackson and other FBI officials that might create an inference of discriminatory attitude or motive regarding the decision to remove Meriano as team leader or her eventual termination.[6] Jackson's observation that Meriano was emotionally distraught, without more, does not suggest the FBI relied upon negative stereotypes of women as Meriano suggests, particularly in light of her admission that she was "trembling" and "crying" during her meeting with Jackson and that she had not slept the night before. (Doc. #46, ¶ 43). While Meriano may believe her treatment by the FBI occurred because of her gender, she "must substantiate [her] allegations with 'sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation [or] conjecture.'" *Mervine v. Plant Eng'g Servs., LLC*, 859 F.3d 519, 521 (8th Cir. 2017); *see also Lewis*, 581 F.3d at 1040 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)) (noting the "'critical issue' in a sex discrimination case is 'whether members

---

[6] While the alleged conduct by Edwards may be indicative of discriminatory attitudes, Edwards' conduct is time-barred for the reasons previously addressed by this Court. Further, Plaintiff's argument that Jackson's awareness of Edwards' sexual history with Meriano discriminatorily colored his opinion of her is factually unsupported, and the record contains no evidence that Edwards' viewpoints were shared by Jackson or other members of FBI management.

of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed'"). Viewing the facts in a light most favorable to Meriano and drawing all reasonable inferences from those facts in her favor, the evidence could not allow a factfinder to conclude that the FBI's actions were motivated by Meriano's gender.

Even assuming, for the sake of argument, that Meriano could establish a *prima facie* case, no jury issue exists as to whether the FBI's proffered reasons for Meriano's removal and termination are pretextual. For Meriano to meet her burden, she "must present sufficient evidence to demonstrate that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Lindeman v. Saint Luke's Hospital of Kansas City*, 899 F.3d 603, 606 (8th Cir. 2018); *see also Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012) (demonstrating a triable issue of pretext may be shown (1) indirectly by "showing the proffered explanation has no basis in fact," or (2) by "directly persuad[ing] the court that a prohibited reason more likely motivated the employer"); *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874–75 (8th Cir. 2010) (noting pretext can be shown by demonstrating an employer failed to follow its own policies, disparate treatment, or a changing explanation of an employment decision). Meriano also falls short of that burden here.

The FBI presents evidence indicating Jackson's decision to remove Meriano as team leader was prompted by her deteriorating job performance, her intent to take an upcoming leave of absence following the conclusion of the Edwards trial, and her visibly overwrought emotional state during her meeting with Jackson on May 29, 2015. Meriano argues the FBI's stated reasons for removing her as team leader are factually false, insisting that her strong performance record contradicts the FBI's justifications and noting there is conflicting testimony about whether her co-workers complained about her preoccupation with the Edwards trial or her diminished

15

performance.  However, the undisputed facts show Meriano did express her concerns surrounding the outcome of Edwards' trial on numerous occasions both before, during, and after the trial, including her submission of a detailed memoranda notifying management of her concerns.  Meriano also admits that she told Jackson in advance of their May 29 meeting that she planned to take open-ended leave once the verdict in Edwards' trial was announced, and further concedes that an agent on indefinite leave cannot effectively serve as team leader of a surveillance squad.  Plaintiff additionally argues that Jackson misinterpreted her emotional reaction during their May 29 meeting, but she admits that she did manifest physical signs of significant emotional distress.  Yet even viewing the facts in her favor, if Jackson did misinterpret Meriano's behavior or give disproportionate weight to her apparent fixation on the Edwards trial, that mistaken belief still does not render the reasons behind his decision-making process pretextual.  *See McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (quoting *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006)) ("A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination.").  The evidence shows that no reasonable factfinder could conclude the FBI's articulated reasons for removing Meriano as team leader have "no basis in fact."  *Gibson*, 670 F.3d at 854.

As to Meriano's 2016 termination, in its Notice of Removal the FBI explicitly noted her excessive absenteeism and inability to fulfill her covert surveillance duties and responsibilities.  The FBI also produced undisputed evidence showing that from June 29, 2015, to January 28, 2016, Meriano used over 1,192 hours of leave from a combination of both paid and unpaid leave sources.  *See Larry v. Potter*, 424 F.3d 849, 851 (8th Cir. 2005) ("excessive absenteeism is a legitimate, nondiscriminatory reason for taking an adverse employment action"); *see also*

*Twymon*, 462 F.3d at 935 (an employer's "burden is one of production, not persuasion"). Meriano argues the FBI's treatment of Meriano caused her absenteeism and rendered her medically unable to work. Though the causes of and reasons for Meriano's absenteeism may be disputed, she must still present evidence that shows the FBI's proffered reasons for terminating her were false and that the real motive was, in fact, discrimination. "A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination." *McNary*, 535 F.3d at 769 (citing *Twymon*, 462 F.3d at 935). The FBI demonstrates that no genuine dispute of material fact remains for trial, and summary judgment is granted as to Count I.

### C. Count III: Retaliation

Title VII prohibits employers from retaliating against employees for engaging in protected conduct. *See* 42 U.S.C. § 2000e-3(a). The parties agree that Meriano presents no direct evidence of retaliation, and thus her retaliation claim is subject to the same *McDonnell Douglas* burden-shifting framework as her sex-discrimination claim. *See Mahler*, 931 F.3d at 805. To establish her *prima facie* case, Meriano must show: "(1) [s]he engaged in a protected conduct; (2) a reasonable employee would have found the retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Id.* The factual and legal arguments raised by the parties regarding Meriano's retaliation claim are largely the same as her sex-discrimination claim.

The Court finds that, even if Plaintiff can establish a *prima facie* case of retaliation,[7] she has still not presented sufficient evidence showing the FBI's reasoning behind its decisions is

---

[7] Viewing the facts and drawing all reasonable inferences in her favor, Plaintiff could be found to have established a *prima facie* case of retaliation, if just barely. However, the Court notes the mere proximity in time between Meriano's participation in the Edwards trial and her subsequent removal as team leader—as well as the other adverse acts which she alleges—does not, in and of itself, show causation. *See Mervine*,

pretextual. *See id.* (quoting *McDonnell Douglas*, 411 U.S. at 802) ("While the proof necessary to establish a prima face case is minimal, [a claimant] must present 'more substantial evidence' to establish pretext because 'evidence of pretext . . . is viewed in light of the employer's justification.'"). As discussed previously, the FBI presents evidence showing Meriano's visibly distressed emotional state, her diminished job performance and effectiveness due to her ongoing preoccupation with the Edwards trial, and her workplace absenteeism over an extended time period. The FBI also presents evidence that Meriano's instruction by FBI counsel to not discuss her concerns about Edwards' harassing conduct was related to her participation in an ongoing trial. In sum, the FBI has satisfied its burden by showing legitimate, non-retaliatory reasons for its treatment of Meriano. Considering the factual record as a whole, Meriano fails to produce sufficient evidence showing the FBI's reasoning has no factual basis or support. *See McNary*, 535 F.3d at 769 (quoting *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) (internal citation omitted)) ("To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'"). Meriano cannot show that a material dispute exists regarding the genuineness of the FBI's belief that Meriano could no longer effectively serve as team leader of the surveillance team or that she was ultimately unable to perform her law-enforcement duties.

Though Meriano may believe that her treatment by the FBI was callous or unfair, the Eighth Circuit emphasizes that "employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 976 (8th Cir. 2012) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)). While

---

859 F.3d at 526 (citation omitted) (noting more than just a temporal proximity between a protected activity and adverse action is required to establish an inference of causation).

the Court is sympathetic to Meriano's situation and the circumstances surrounding the end of her law enforcement career, it is this Court's task to determine whether the FBI's decision-making was rooted in impermissible retaliatory practices. No reasonable jury could find that it was, and Defendant is entitled to summary judgment on Count III.

## IV. CONCLUSION

Accordingly, the FBI's motion for summary judgment (Doc. #42) is GRANTED. All of Plaintiff's claims against Defendant are hereby dismissed.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: December 17, 2019